UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

United States District Court
District of Connecticut
FILED AT    HARTFORD
12/31 ___2024
Dinah Milton Kinney, Clerk
By_____
Deputy Clerk

IN THE MATTER OF THE SEARCH OF 225 SALMON BROOK ROAD, APARTMENT 2, GRANBY CT

Case No.

**Filed Under Seal**

3:24-mj-1157 RAR

## SUPPLEMENTAL AFFIDAVIT

I, Corbett Tomsovic, being first duly sworn, hereby depose and state as follows:

1. I submit this affidavit in support of a supplemental application to seize items located during the execution of a search warrant at 225 Salmon Brook Road, Apartment 2, Granby, CT, referred herein as the **Target Location** and described more fully in Attachment A, for evidence of firearm trafficking as described more fully in Attachment B.

2. In particular, I believe that during the execution of a search warrant at the **Target Location** investigators also located evidence of firearm trafficking in violation of 18 § USC 933.

## INTRODUCTION & BACKGROUND

3. I am a special agent with the Federal Bureau of Investigation (FBI) in New Haven, Connecticut. I have been employed by the FBI since March 2024. I am assigned to the Northern Connecticut Safe Streets Gang Task Force (Task Force). The Task Force includes the FBI, the Waterbury Police Department (WPD), the Connecticut State Police (CSP), The New Britain Police Department (NBPD), the West Hartford Police Department (WHPD), the Hartford Police Department (HPD), the Naugatuck Police Department (NPD), and the Connecticut Department of Correction (DOC).

4. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am empowered by law to conduct investigations and to

make arrests for offenses enumerated in 18 U.S.C. § 2516. I am also a "federal law enforcement officer" within the meaning of the Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent authorized to enforce criminal laws and duly authorized by the Attorney General to request a search warrant.

5. I was trained as a Special Agent at FBI Training Academy. During my career, I have participated in numerous criminal investigations, including investigations involving suspected narcotics trafficking by individuals and organizations, gang activity, violent crime, and money laundering.

6. I am the officer responsible for the investigation of explosive devices as the **Target Location.** The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Based upon information known to me because of my participation in this investigation, as well as information, which I have determined to be accurate and reliable, provided to me by other law enforcement officers, including my co-case agents in this investigation, I am familiar with the information discussed herein. Where the contents of documents, or communications with others, are reported herein, they are set forth in substance and part, unless otherwise indicated.

7. KYLE CHAMBERS has been identified as a subject of interest via the use of various investigative methods, including but not limited to, physical surveillance, at times in conjunction, review of records, conversations with previous significant other, and guardian leads from New Haven Ops Center originating from NTOC and two NYPD tips sent to Granby Police Department. Because the information and evidence gathered during this investigation is voluminous, I have not included every fact known to me concerning this investigation. Instead, I

have set forth those facts which I believe are necessary to establish the existence of probable cause to support the requested authorizations.

## NATIONAL FIREARMS ACT

8. The National Firearms Act prohibits possession of certain firearms not registered to an individual in possession of it. *See* 26 U.S.C. § 5861(d). A firearm under the act is defined to include a "destructive device." *See* 28 U.S.C. § 5845(a). A destructive device, in turn, is defined to include a grenade. *See* 28 U.S.C. § 5845(f)(1)(B).

## SUMMARY OF THE INVESTIGATION

9. On December 30, 2024, the FBI New Haven Division was assigned a guardian from National Threat Operation Center (NTOC) regarding CHAMBERS showing intent to use multiple weapons and explosives. The tip was sent by an individual that I will refer to as W1 who left a phone number that was not in service. W1 stated that CHAMBERS has explosives at the residence 225 Salmon Brook Road, Granby, Connecticut in his storage compartment with the intent to use them on December 31, 2024. W1 stated the explosives in CHAMBERS residence are claymores, landmines, 40mm artillery and more. W1 also stated that CHAMBERS also possess frag grenades and that he plans to utilize them.

10. CHAMBERS previously worked as a dog handler through Global K9 Protection Group (GK9PG) at JFK International Airport, New York. However, CHAMBERS was recently terminated from GK9PG. CHAMBERS possessed an ATF permit to carry explosives through GK9PG but it has been revoked.

11. CHAMBERS previous significant other was contacted to acquire further information on CHAMBERS. The previous significant other stated CHAMBERS suffers from personality disorder, and he has not been taking his medication for several months. The previous

3

significant other was asked if CHAMBERS is capable of harming individuals, and she stated "absolutely". The previous significant other stated CHAMBERS has access to training equipment from his time in the National Guard and his employment with GK9PG.

12. Along with the tip from NTOC, the FBI received multiple tips from the New York Police Department's Crime Stoppers. Like the tip to NTOC, these tips contained the same information regarding CHAMBERS possessing firearms, explosives and was going to use them. Additionally, a tip contained what appeared to be a screen shot from a Facetime call. This picture showed a white male holding what appeared to be a 40 mm grenade. The number "860-418-9963" could be observed in the photo as well. Using the open-source database "CLEAR," investigators were able to determine that the number belonged to CHAMBERS.



**[Photo appended to tip]**

13. Law enforcement showed this photo to the previous significant other. She informed investigators that the torso seen in the photo appeared to be CHAMBERS and the in which he was located was in the **Target Location**.

14. The FBI consulted with the ATF and provided the above photograph. According to ATF Special Agent Seth Christy, the item the male is holding appears to be a 40 mm grenade which would be unlawful for anyone to possess without the appropriate permit, which CHAMBERS no longer has as of July 16, 2024.

## EXECUTION OF THE SEARCH WARRANT

15. Based in part on the foregoing, the Hon. Robert A. Richardson authorized a search for the **Target Location** for evidence of violations of the National Firearms Act – in particular for the search of the **Target Location** for evidence of explosive devices.

16. On December 31, 2024, I, along with other law enforcement officers, executed the search warrant at the **Target Location**.

17. Prior to the execution of the search, law enforcement was able to detain CHAMBERS who claimed that he knew that law enforcement was coming and that he placed prohibited items in the hallway next to the front door for law enforcement to take.

18. In the hallway, next to the front door, law enforcement located a small amount of C4 high explosive and other low explosive ordinances.

19. CHAMBERS also advised that he had a laptop which he used to access the dark web to access "G-code."

20. I understand based on my conversations with law enforcement that G-code allows for the creation of blueprints by which a 3d printer can be automated to print items.

21.     I also understand based on my conversations with law enforcement that the dark web can be accessed using thumb drives on which operating systems to access the dark web can be loaded as well as through cell phones.

22.     Immediately prior to the execution of the search warrant, law enforcement was also able to make contact with one of the anonymous NYC tipsters described above in paragraph 7. The tipster explained that CHAMBERS traffics firearms and destructive devices to New York and that he would sell a pistol with a "switch" for $900 dollars. I understand a "switch" to be a reference to a machine gun conversion device which are used convert semi-automatic firearms to automatic firearms.

23.     Upon execution of the search warrant, law enforcement discovered a number of prohibited firearms, which appear to have been modified for fully automatic fire, as well as numerous suppressors and a 3d printer.


[Image of suspected 3D printer]


[Firearm evidence]



[Firearm Evidence]



[Firearm evidence]



[Firearm Evidence]



[Firearm Evidence]

24. Law enforcement also located a laptop during the execution of the search warrant.

25. Law enforcement also located what are believed to be machine gun conversion devices.

## CONCLUSION

26. Based on the forgoing, I believe there is probably cause that evidence of violations of firearm trafficking in violation of 18 USC 933 will be located at the **Target Location** as more fully described in Attachments A and B.

Respectfully submitted,

CORBETT TOMSOVIC
Digitally signed by CORBETT TOMSOVIC
Date: 2024.12.31 22:26:34 -05'00'

CORBETT TOMSOVIC
FBI SPECIAL AGENT

Subscribed and sworn to before me by telephone this 31 day of December 2024.

Robert A. Richardson
Digitally signed by Robert A. Richardson
Date: 2024.12.31 22:53:29 -05'00'

HON. ROBERT A RICHARDSON
UNITED STATES DISTRICT JUDGE

## ATTACHMENT A
**Property to Be Searched**

225 Salmon Brook Street, Apt 2, Grandy, Connecticut (Target Location)

The Target Location is a multi-family house with brown trim. Apartment 2 is located though the front door and up a flight of stairs.



## ATTACHMENT B
### *Property to Be Seized*

I. Evidence of violations of 18 U.S.C. § 933 (Firearm Trafficking) by Kyle CHAMBERS, specifically the following:

1. Any and all firearms, firearm components, and accessories associated with firearms

2. Any and all machine gun conversion devices.

3. Any and all ammunition.

4. Any and all printing devices.

5. Any and all 3D printers.

6. Any and all electronic devices, to include laptops, thumb drives, and cell phones.

7. Records and information constituting or concerning correspondence among between individuals that relate in any way to possessing, acquiring, transfer, or trafficking of firearms.

8. Records and information containing photographs and/ or videos depicting firearms or destructive devices.

9. Any books, records, receipts, notes, ledgers, journals, travel documents and other papers relating to the transfer of firearms.;

10. Photographs of people, assets, or objects that may be related to the trafficking of firearms;

11. Personal effects tending to establish proprietary interest, including but not limited to, personal identification, driver's licenses, vehicle registration certificates, passports, birth certificates and deeds;

12. Records of travel in furtherance of the unlawful trafficking of firearms;

13. Records, information, and items regarding (i) dominion and control over **the Target Location**, (ii) the identity or known aliases of **CHAMBERS**, or (iii) the existence or location of any storage areas or containers where evidence of violations of firearm trafficking. Such records, information, and items would include personal identification documents, keys to storage areas, documents and papers bearing names and addresses,

rental receipts, lease agreements, mortgage records, utility bills, canceled mail, paycheck stubs or other employment records.